Slip Op. 12- 25

UNITED STATES COURT OF INTERNATIONAL TRADE

TRUST CHEM COMPANY LIMITED,

       Plaintiff,

              v.

UNITED STATES,

       Defendant,

          – and –

NATION FORD CHEMICAL COMPANY and
SUN CHEMICAL CORPORATION,

       Defendant-Intervenors.

Before: Donald C. Pogue,
        Chief Judge

Court No. 10-00214

**OPINION**

[Commerce's remand determination affirmed.]

Dated: February 29, 2012

    Ronald M. Wisla and Lizbeth R. Levinson, Kutak Rock LLP, of
Washington, DC, for Plaintiff.

    Patryk J. Drescher and Alexander V. Sverdlov, Trial
Attorneys, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice, of Washington, DC, for Defendant.  With
them on the brief were Tony West, Assistant Attorney General,
Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant
Director.  Of counsel on the brief was Whitney M. Rolig,
Attorney, Office of the Chief Counsel for Import Administration,
U.S. Department of Commerce, of Washington DC.

    Gregory C. Dorris, Pepper Hamilton LLP, of Washington, DC,
for Defendant-Intervenors.

**Pogue, Chief Judge:** This action returns to court following
the remand ordered by <u>Trust Chem. Co. v. United States</u>,__ CIT __,
791 F. Supp. 2d 1257 (2011) ("<u>Trust Chem I</u>").  <u>Trust Chem I</u>
required that the Department of Commerce ("Commerce" or "the
Department") reconsider data it had selected to value the nitric
acid used to produce Plaintiff's merchandise.

In Commerce's <u>Final Results of Redetermination Pursuant to
Court Remand</u>, ECF No. 51("<u>Remand Results</u>")**,** the Department
continues to value nitric acid using the data selected prior to
the court's remand order.  Plaintiff again challenges Commerce's
data selection.

The court has jurisdiction pursuant to 28 U.S.C.
§ 1581(c)and § 516A(a)(2) of the Tariff Act of 1930, as amended,
19 U.S.C. § 1516a(a)(2) (2006).[1]

As explained below, the court concludes that, on the basis
of the record here, a reasonable mind could find that Commerce's
choice constitutes the best data available.  Commerce's <u>Remand
Results</u> are therefore affirmed.

---

[1] All subsequent citations to the Tariff Act of 1930, as
amended, are to Title 19 of the U.S. Code, 2006 edition.

<u>BACKGROUND</u>

Facts necessary to the disposition of the Remand Results are
the following:[2]

The data at issue comes from the World Trade Atlas ("WTA
data").[3]  Using this database, in the final results of the fourth
administrative review of the antidumping order covering
Plaintiff's merchandise imported from the People's Republic of
China,[4] Commerce selected, for nitric acid, a value of $10,474
USD/MT.[5]

---

[2] Familiarity with the court's prior decision is presumed.

[3] WTA data is a secondary electronic source published by
Global Trade Information Services, Inc., which reports the
<u>Monthly Statistics of Foreign Trade of India.</u> <u>Volume II: Imports</u>,
which in turn is published by the Directorate General of
Commercial Intelligence and Statistics of the Ministry of
Commerce and Industry, Government of India. <u>Prelim. Surrogate
Value Mem.</u>, Original Admin. R. Pub. Doc. 34 at 2-3 (referring to
<u>http://www.gtis.com/wta.htm.</u>); see also Original R. Def.'s Resp.
to Pl.'s Rule 56.2 Mot. for J. on the Agency R. 3 n.2, ECF No. 40
("Original R. Def.'s Br.").

[4] <u>See</u> <u>Carbazole Violet Pigment 23 from the People's Republic
of China</u>, 75 Fed. Reg. 36,630 (Dep't Commerce June 28, 2010)
(final results of antidumping duty administrative review) ("<u>Final
Results</u>") and accompanying <u>Issues & Decision Memorandum</u>, A-570-
892, ARP 07-08 (June 21, 2010), Original Admin. R. Pub. Doc. 63
("<u>I & D Mem.</u>")(adopted in <u>Final Results</u>, 75 Fed. Reg. at
36,631.).  The period of review ("POR") was December 1, 2007 to
November 30, 2008.  Commerce conducts administrative reviews of
antidumping duty orders pursuant to  19 U.S.C. § 1675.

[5] Because the goods at issue come from China, Commerce
employed its rules and practices for non-market economies
("NMEs") in these proceedings.  In administrative proceedings
involving goods from an NME, Commerce may approximate the normal
value of the goods based on "surrogates" for the value of their
"factors of production" ("FOP"). 19 U.S.C. § 1677b(c).  Commerce

Plaintiff sought review of Commerce's choice, arguing that:
(A) alternative data it proposed was more specific to, and hence
more representative of, the nitric acid used in producing its
merchandise, and (B) the WTA data was aberrational or
unrepresentative.

In Trust Chem I, the court affirmed Commerce's rejection of
Plaintiff's specificity claim.  Although the record indicated
that "'high' strength 98 percent nitric acid [was] used in the
production of Trust Chem's merchandise[,]" Trust Chem I at 1262,
and that "weak" and "high strength" nitric acid had different
values, it did not establish the concentration level of the
nitric acid for the values proposed by any party.[6]  Consequently,
based on the record as it then stood, the court rejected
Plaintiff's claim that there was only one reasonable choice for
the value to be selected for the nitric acid at issue. Trust Chem

---

selects surrogate data from "one or more" surrogate market
economy countries. 19 U.S.C. § 1677b(c)(1),(4).  Here, Commerce
selected India as the surrogate country.  No party challenges
this choice.
    Within certain statutory limitations, Commerce, using
criteria established by regulation and practice, selects
specific surrogate values in each individual administrative
proceeding, by choosing the "best available information[.]"
19 U.S.C. § 1677b(c)(1)(B).

[6] See Remand Results at 10. Unlike the original
investigation and the first administrative review, here the
record indicated that "the producer used nitric acid with a
concentration level of 98 percent to manufacture [Plaintiff's
merchandise]."  In the original investigation, Commerce found WTA
data suggesting a value of more than $4,000 USD/MT to be
aberrational.  See Trust Chem I at 1267.

I at 1262-63.  However, the court remanded the case for Commerce

to more adequately demonstrate that the WTA data it did select

was a reasonable, not aberrational, choice, when compared to

other record data.  Trust Chem I at 1268-69 ("Commerce's job is

to compare the data on the record and provide an explanation that

considers the important aspects of the problem presented."

(citation omitted)).[7]  The court also invited Commerce to re-open

the record to obtain appropriate data for comparison.

> [T]he record as it currently stands does not contain
> specific pricing data from the POR that is
> representative of the nitric acid used by the
> respondent. Such data could be used for comparison to
> the WTA data. It will therefore be appropriate, upon
> remand, for Commerce to re-open the record.

Trust Chem I at 1268 n.28.

On remand, Commerce re-opened the record, but Plaintiff

---

[7] In Trust Chem I, the court also noted that Commerce had
failed to discuss the value for nitric acid originally submitted
by Defendant-Intervenors ("Petitioners"), even though that value
was substantially less than the WTA value Commerce selected.
Trust Chem I at 1267-68.  On remand, Petitioners revised their
original submission.

> [P]etitioners contend their originally proposed
> surrogate value of $839.44 per MT from the Indian
> Department of Commerce's Export Import Data Bank was
> flawed because it was based on the only data available
> to them at that time, which were values from 2007-2008
> and quantities from 2008-2009 (Apr-Dec). Petitioners
> also claim the conversion to U.S. dollars was not done
> properly. Petitioners argue that when the conversion to
> U.S. dollars is done properly, the AUV [Average Unit
> Value] is $10,211 per MT. . . .

Remand Results at 6.

chose not to submit evidence that would demonstrate the

relationship between prices and concentration levels for nitric

acid.  Remand Results at 23 ("Trust Chem was free to place

information on the record regarding nitric acid prices and

concentration levels, but chose not to.").[8]

     For its part, Commerce placed historical WTA data on the

remand record (December 2003-November 2008) for India and other

potential surrogate countries, and issued a letter requesting

comments from the parties.  This historical data showed a wide

variation in the value of nitric acid for imports into the

different countries.

          [W]e examine the AUVs computed for each of those
          countries for the December 2007 through November 2008
          POR, which are as follows: $457 per MT (Philippines);
          $508 per MT (Indonesia); $548 per MT (Peru); $1,556 per
          MT (Colombia); $3,894 per MT (Thailand); and $10,474
          per MT (India)[the latter value being that used in
          Commerce's original Final Results].

Remand Results at 11.

     Considering these alternatives, Commerce decided that "the

WTA AUV used in the Final Results appears to be consistent with

the higher price range one would expect for 98 percent nitric

acid."  Department of Commerce Draft Results of Redetermination

Pursuant to Court Remand Carbazole Violet Pigment 23 from the

People's Republic of China, Remand Admin. Pub. Doc. 9 at 14

("Draft Remand Results"); see also Remand Results at 26 ("For the

---

     [8] Plaintiff does not challenge this finding.

reasons stated above, the Department has not made any changes to its Draft Remand Results").

Commerce acknowledged that the record did not contain "specific evidence to demonstrate the actual concentration(s) of nitric acid imported into India and the other potential surrogate countries." Id. at 13. Commerce reasoned, however, that:

> information on the record indicates the safe storage
> and transport of higher concentrations of nitric acid,
> including 98 percent nitric acid, requires different,
> more stringent methods, leading to increased
> costs. . . . Petitioners also offer a monthly breakdown
> of the nitric acid import quantities for India and the
> other potential surrogate countries during the POR and
> argue the relatively smaller quantities and unit value
> of Indian imports are in line with concentrated nitric
> acid imports packed in Teflon or glass
> containers. . . .While these monthly data do not
> specify concentration levels, it is notable that [the
> other potential surrogate value countries, i.e.,] Peru,
> the Philippines, and Indonesia, the countries with
> relatively lower AUVs, imported relatively larger
> quantities on a monthly basis, whereas India, with its
> relatively higher AUV, imported comparatively smaller
> volumes on a monthly basis. Since the record indicates
> it is more difficult and costly to store and ship
> higher concentration nitric acid, the data suggest the
> larger volume of imports into Peru, the Philippines,
> and Indonesia likely would have consisted of lower
> concentrations of nitric acid.

Id. at 14 (citations omitted).

To corroborate its analysis, Commerce also:

> considered the [U.S.] price list data [submitted by the
> Petitioners] as a measure of how the concentration
> level of nitric acid reflects price. [footnote omitted]
> See the Draft Remand Determination at 13 (stating "the
> per-MT price of 98 percent nitric acid is $10,738
> (based on the 30 gallon price quoted in the price list)
> and $13,907 (based on the 15 gallon price)" and noting
> that "we have considered {these prices} as a measure of

how the concentration level of nitric acid affects
price"). . . .

Remand Results at 24-25.

In addition, the Department determined that the Indian WTA
value for nitric acid was not aberrational as it was stable over
the five-year period examined.  Remand Results at 14.

As noted above, Plaintiff now challenges Commerce's remand
determination.


**STANDARD OF REVIEW**

Under the court's familiar standard of review, the
Department must, in its remand redetermination, comply
with the terms of the court's remand order. Jinan Yipin Corp. v.
United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009). In
addition, the court shall "hold unlawful any determination,
finding, or conclusion found . . . to be unsupported by
substantial evidence on the record, or otherwise not in
accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); Koyo Seiko
Co. v. United States, 20 F.3d 1160, 1164 (Fed. Cir. 1994).


**DISCUSSION**

Plaintiff presents four objections to Commerce's Remand
Results, claiming that A)they are not responsive to the remand
order; B) they are not supported by substantial evidence; C)they
improperly rely on U.S. nitric acid prices; and D) they produce

absurd results. Pl.'s Cmts. to Commerce's Redetermination
Pursuant to Remand 1-12, Dec. 19, 2011, ECF No. 54 ("Pl.'s
Cmts.").  The court will consider each objection in turn.

**A. Compliance with the court's order.**

Plaintiff argues that Commerce failed to comply with the
remand order, and a second remand is necessary, because the
remand results continue to lack usable surrogate value
information that is specific to Trust Chem's supplier's nitric
acid. Pl.'s Cmts. at 2.

But Plaintiff has only itself to blame for the weaknesses in
the record – it was Plaintiff that failed to adequately respond
to Commerce's decision to re-open the record. See QVD Food Co. v.
United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although
Commerce has authority to place documents in the administrative
record that it deems relevant, 'the burden of creating an
adequate record lies with [interested parties] and not with
Commerce.'" (alteration in original) (quoting Tianjin Mach. Imp.
& Exp. Corp. v. United States, 16 CIT 931, 936, 806 F. Supp.
1008, 1015 (1992)).  Commerce is not required to find all
conceivable data in order to comply with the law. Makita Corp. v.
United States, 21 CIT 734, 753, 974 F. Supp. 770, 787 (1997).
Def.'s Resp. to Pl.'s Cmts. Regarding the Remand Redetermination
7, ECF No. 58 ("Def.'s Resp.").  Having reopened the record,
Commerce's responsibility was to choose the best available

information from the record.  The remand order did not require

otherwise.  Thus, Plaintiff's objection does not provide a basis

to reverse Commerce's choice.

**B. Are the Remand Results supported by substantial evidence?**

As long as Commerce takes the record evidence into account

and provides an adequate explanation of its reasonable

determination, it does not fail the substantial evidence standard

just because there exists evidence that detracts from Commerce's

decision. Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed.

Cir. 2007) (internal citations omitted).  "The specific

determination we make is 'whether the evidence and reasonable

inferences from the record support'" Commerce's findings.  Daewoo

Elecs. Co. v. Int'l Union, 6 F.3d 1511, 1520 (Fed. Cir.

1993)(citing Matsushita Elec. Indus. Co., v. United States, 750

F.2d 927, 933 (Fed. Cir. 1984)).

Here, Commerce conceded both that the record evidence was

imperfect and that the record revealed wide variation in

potential surrogate values.  Nonetheless, Commerce gave a

reasonable explanation as to why other surrogate values were not

appropriate for this matter and how the surrogate value it

selected fit into the historical data scheme. Def.'s Resp. at 13-

14.  Commerce deduced that because the other potential surrogate

countries have lower AUVs than India's, but larger monthly import

quantities, the numbers are consistent with India's using higher

strength nitric acid like that used to purchase Plaintiff's merchandise,[9] which is more costly to produce, store, and transport. Remand Results at 14.  Bolstering this claim is data regarding the extra chemical processing, costs and expensive shipping methods involved in producing the higher concentration nitric acid. Pet'rs' Cmts., Remand Admin. R. Pub. Doc. 5 at Attach. B and Ex. 1 ("Pet'rs' Cmts."). Based on this record evidence, Commerce's un-rebutted explanation regarding nitric acid's pricing, storage and transportation costs or requirements is reasonable, and is therefore supported by substantial evidence. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006), citing SSIH Equipment SA v. United States ITC, 718 F.2d 365, 381 (Fed. Cir. 1983).

**C. The Remand Results do not improperly rely on U.S. nitric acid prices.**

Plaintiff next contends that Commerce improperly used the U.S. price quotes submitted by Petitioners as benchmarks, directly contradicting Commerce's initial refusal to use U.S.

---

[9] Plaintiff challenges as "dubious" Commerce's reliance on "98%" nitric acid pricing, arguing that 98% acid is not comparable to Trust Chem's 96%-98% nitric acid.  Commerce responds that Trust Chem's reference to 96%-98% is confusing, because while Trust Chem initially reported use of 96%-98% nitric acid, in all subsequent references Trust Chem refers to 98% nitric acid. Remand Results at 23-24.  Moreover, Commerce found that, even if Trust Chem's supplier did use 96% nitric acid, the cost differences between that and 98% would still be relatively small compared to the differences between weak and high strength nitric acid. Id. at 24; Pet'rs' Letter, Original Admin. R. Pub. Doc. 57 at 1-2.

benchmarks during the administrative review. Pl.'s Cmts. at 9.

Plaintiff adds that Commerce is now comparing import statistics

with a non-contemporaneous U.S. price list. Id. at 10.

Commerce acknowledges that the Petitioners submitted data

with U.S. prices not specific to the POR.  Nonetheless,

Petitioners' publicly-available price list shows that higher

strength nitric acid sells for much higher prices than the weaker

nitric acid. Pet'rs' Cmts. at Attach. B, Ex. 2.  Commerce

considered this data for a "measure of how the concentration

level of nitric acid affects price[,]" rather than as a benchmark

for the price selected. Remand Results at 14 n.9.

Moreover, the record clearly indicates that lower import

values with larger import quantities represent lower purity

levels and higher values with smaller quantities reflect higher

purity levels. Remand Results at 13-14, 18; Pet'rs' Rebuttal

Cmts., Remand Admin. R. Pub. Doc. 11 at 3.  See Lifestyle

Enterprise, Inc. v. United States, __ CIT __, 768 F. Supp. 2d

1286, 1309 (2011)("Commerce cannot base its analysis on mere

speculation, but may draw reasonable inferences from the

record.") (citation omitted).

As we explained in Trust Chem I, "there is no statutory

prohibition on using U.S. or other market economy data to

corroborate record evidence." Trust Chem I at 1266 (citing Peer

Bearing Co.-Changshan v. United States, __ CIT __, 752 F. Supp.

2d 1353 at 1372 (2011).

### D. Exhaustion of Administrative Remedies

Finally, Plaintiff argues that a nitric acid price of $10,474 USD/MT is "patently absurd" because, in fact, low-strength nitric acid is actually used to produce the subject merchandise.  Seeking to supplement the record evidence on this issue, Plaintiff now claims that its supplier diluted the 96-98% strength nitric acid that it purchased to create 38% strength nitric acid that was then used to produce the subject merchandise. Pl.'s Cmts. at 12; Trust Chem's July 31, 2009 Supp. Resp., Original Admin. R. Pub. Doc. 18 at 17, 24, App. S1-29, S1-33. Plaintiff asserts that the only reason a supplier would do this would be to save costs by transporting the small amounts of high strength nitric acid and minimizing water shipping costs. Pl.'s Cmts. at 12-13.  Plaintiff thus claims that ultimately the surrogate value used for 96-98% nitric acid must be adjusted to reflect the 38% concentration of nitric acid used to produce the subject merchandise. Pl.'s Cmts. at 13.

Commerce and Petitioners correctly respond that because Plaintiff raises this issue for the first time here, after remand, Plaintiff has failed to exhaust its administrative remedies below. See 28 U.S.C. § 2637(d) ("In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.").

It is axiomatic that, to preserve Commerce's authority and

judicial efficiency, a party, where appropriate, must present its

arguments to the agency before bringing them to this court. <u>Corus</u>

<u>Staal BV v. United States</u>, 502 F.3d 1370, 1379 (Fed. Cir. 2007).

Commerce must first have an opportunity to consider the issue and

give a reasoned response to it. <u>Gerber Food (Yunnan) Co. v.</u>

<u>United States</u>, __ CIT __, 601 F. Supp. 2d 1370, 1379 (2009).

Because of the length of time this matter has been under

consideration, requiring exhaustion is particularly appropriate

here.

Plaintiff failed to provide Commerce the opportunity to

address this issue. <u>Clearon Corp. v. United States</u>, __ CIT __,

800 F. Supp. 2d 1355, 1361-63 (2011)("Plaintiffs unfortunately

did not present these arguments to Commerce when they had the

opportunity").  Therefore, we decline to hear Plaintiff's

argument on its supplier's shipping methodology. Def.'s Resp. at

22.[10]

<u>**CONCLUSION**</u>

Commerce's duty, as emphasized by <u>Trust Chem I</u>, is to

compare the data on the record and provide an explanation that

considers the important aspects of the problem presented.  <u>SKF</u>

---

[10] Commerce notes that even if Plaintiff had exhausted its
remedies below, this argument must still fail because the higher
cost of manufacturing and shipping high strength nitric acid
would not offset any savings in transportation of nitric acid
with less water.  In fact, Plaintiff offers no evidence that weak
strength nitric acid could even substitute for high strength
nitric acid, in light of the importance of chemical purity to the
production process. Def.'s Resp. at 23-24.

USA, Inc., v. United States, 630 F.3d 1365, 1373-74 (Fed. Cir.
2011).  As long as Commerce reasonably explains its choice
between imperfect alternatives, the court will not reject the
agency's determination. Dorbest Ltd. v. United States, 30 CIT
1671, 1676, 462 F. Supp. 2d 1262, 1269 (2006); Goldlink Indus. v.
United States, 30 CIT 616, 619, 431 F. Supp. 2d 1323, 1327 (2006)
(The court evaluates "whether a reasonable mind could conclude
that Commerce chose the best available information.").

Here Commerce complied with the court's remand instructions
and gave a reasonable explanation that due to production and
transportation costs and different pricing schemes for different
concentrations of nitric acid, using the WTA data was appropriate
on this administrative record.  While it is more than unfortunate
that the parties did not create a better record on the main issue
presented, our review is based on this record.[11]

Therefore, for the reasons discussed above, Commerce's
Remand Results will be AFFIRMED.  Judgment will be entered
accordingly.  IT IS **SO ORDERED**.

                                        /s/  Donald C. Pogue
                                   Donald C. Pogue, Chief Judge
Dated:      February 29, 2012
            New York, N.Y.

_____

[11] "The court shall hold unlawful any determination,
finding, or conclusion found–. . .to be unsupported by
substantial evidence on the record, or otherwise not in
accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

Slip Op. 12- 25

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRUST CHEM COMPANY LIMITED,<br><br>       Plaintiff,<br><br>           v.<br><br>UNITED STATES,<br><br>       Defendant,<br><br>          - and –<br><br>NATION FORD CHEMICAL COMPANY and<br>SUN CHEMICAL CORPORATION,<br><br>       Defendant-Intervenors. | Before: Donald C. Pogue,<br>        Chief Judge<br><br>Court No. 10-00214 |

## JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the Department of Commerce's determination in <u>Carbazole Violet Pigment 23 from the People's Republic of China</u>, 75 Fed. Reg. 36,630 (Dep't Commerce June 28, 2010) (final results of antidumping duty administrative review), as further explained by the <u>Final Results of Redetermination Pursuant to Court Remand</u>, ECF No. 51, is AFFIRMED.

                             /s/   Donald C. Pogue
                         Donald C. Pogue, Chief Judge

Dated:     February 29, 2012
            New York, N.Y.